Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| | | |
|---|---|---|
| DIANA CABRERA TORRES<br>Recurrida<br><br>v.<br><br>PAN PEPÍN, INC.; COMPAÑÍA ASEGURADORA A<br>Peticionaria | KLCE202500532 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm. BY2023CV00696<br><br>Sobre: Represalia; Discrimen; Despido Injustificado; Procedimiento Sumario |

Panel integrado por su presidente, el Juez Adames Soto, la Jueza Aldebol Mora y el Juez Marrero Guerrero[1]

Adames Soto, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 23 de julio de 2025.

Comparece Pan Pepín, Inc. (Pan Pepín o peticionaria), a través de un recurso de *certiorari*, solicitando la revocación de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), el 2 de mayo de 2025. En el contexto de un pleito laboral, el foro primario declaró *No Ha Lugar* sendas mociones de sentencia sumaria presentadas por la peticionaria y por la señora Diana Cabrera Torres (señora Cabrera Torres o recurrida). Al así decidir el foro primario concluyó que, con la prueba documental del expediente, no podía determinar si los alegados actos de represalia que le imputaba la recurrida a Pan Pepín habían ocurrido, y de ocurrir, si dicha causa de acción se encontraba prescrita.

---

[1] Mediante Orden Administrativa OATA-2025-084 se designa al Hon. Ricardo G. Marrero Guerrero como integrante del Panel, debido a que el Hon. Abelardo Bermúdez Torres dejó de ejercer funciones como Juez del Tribunal de Apelaciones el 6 de mayo de 2025.

Por los fundamentos que expresaremos, decidimos *expedir* el auto solicitado y *revocar* la *Resolución* recurrida.

## I. Resumen del tracto procesal

El 8 de febrero de 2023, la señora Cabrera Torres presentó una querella contra su patrono-Pan Pepín, imputándole: despido injustificado, (Ley Núm. 80-1976); discrimen por impedimento, (Ley Núm. 44-1985); discrimen en el empleo, (Ley Núm. 100-1959) y; represalias (Ley Núm. 115-1991).  En lo relativo al asunto ante nosotros, la recurrida alegó que, posterior a que radicara una queja ante la Unidad Anti-Discrimen (UAD) contra Pan Pepín, esta última tomó represalias en su contra, lo que provocó su renuncia involuntaria. Indicó, además, que, en el 2018, acudió a la Corporación del Fondo del Seguro del Estado (Fondo) para tratar su condición respiratoria, causada por la inhalación de diferentes químicos, entre estos, la harina. Como resultado de los servicios recibidos en el Fondo por su condición médica, arguyó que solicitó acomodo razonable, pero Pan Pepín creó un ambiente hostil, recibió varias amonestaciones y soportó largas horas laborales. En definitiva, aseveró que las circunstancias de trabajo se volvieron tan onerosas que resultó en su renuncia involuntaria.

En respuesta, Pan Pepín presentó *Contestación a Demanda.* Luego de esta admitir y negar algunas de las alegaciones contenidas en la *Demanda*, incluyó entre sus defensas afirmativas la de la prescripción de todas las causas de acción. En lo pertinente al asunto ante nuestra atención, en la respuesta a la *Demanda* Pan Pepín esgrimió que, toda vez que la recurrida renunció a su empleo el 1 de julio de 2020, y su último acto protegido, el de la presentación de la queja ante la UAD, ocurrió el 30 de agosto de 2019, al momento de la presentación de la *Demanda* en el 2023 ya había transcurrido el plazo prescriptivo de tres años para instar acción por represalia.

A esto añadió, que de las alegaciones tampoco se derivaba un caso *prima facie* al palio de los estatutos aplicables.

Más adelante, antes de que concluyera el descubrimiento de prueba, Pan Pepín presentó una *Moción de Sentencia Sumaria.* En su escrito, luego de identificar los hechos medulares que, a su juicio, no estaban en controversia, e incluir la prueba documental que los sostenían, planteó que las reclamaciones sobre despido injustificado, discrimen por impedimento y represalias estaban prescritas. En lo que nos concierne, sostuvo que, según la Ley Núm. 115-1991, la acción civil debió presentarse dentro de los tres (3) años de la fecha en que ocurrió el último acto protegido, lo que en este caso no había ocurrido. Igualmente, adujo que la recurrida no había demostrado que su causa de acción sobre represalias justificara la concesión de un remedio.

Por su parte, la señora Cabrera Torres instó escrito en oposición a la solicitud de sentencia sumaria, y su vez presentó su propia *Moción de Sentencia Sumaria.* En esta adujo que la peticionaria discriminó en su contra al no haberle provisto de un acomodo razonable en su trabajo, a pesar de que su salud se encontraba en deterioro. Aseveró haber establecido la presunción *juris tantum* de represalias con la prueba presentada, toda vez que su renuncia equivalió a un despido constructivo posterior a la presentación de su queja ante la UAD.

Luego de varios trámites procesales, el TPI emitió una *Sentencia Parcial y Orden,* declarando *Ha Lugar* la *Moción de Sentencia Sumaria* presentada por Pan Pepín, a los efectos de desestimar, con perjuicio, las causas de acción sobre despido injustificado, discrimen en el empleo y discrimen por impedimento por prescripción. Por tanto, la única causa de acción que el TPI juzgó que ameritaba continuar los procesos fue la de represalias.

La referida *Sentencia Parcial* advino final, firme e inapelable.

Posteriormente, Pan Pepín presentó una segunda *Moción de Sentencia Sumaria,* esta vez cuando ya había concluido el descubrimiento de prueba. Tal como lo hizo en su primera moción dispositiva, la peticionaria presentó una lista de hechos medulares, que tildó de incontrovertidos, junto a la prueba documental pertinente para sostenerlos, y entonces pasó a discutir las razones por las cuales la única causa de acción que subsistió, por represalias, estaba prescrita. En cuanto a esto, explicó que, según la prueba con la que contaba la recurrida para establecer dicha causa de acción, acudió al Fondo el 22 de agosto de 2018, (actividad protegida), y los alegados hechos en represalia ocurrieron entre los años 2018-2019. Además, luego de que la señora Cabrera Torres acudiera a la UAD el 30 de agosto de 2019, (otra actividad protegida), la prueba no demostraba que la recurrida hubiese sufrido acto alguno de represalias, es decir, que hubiese sido despedida, amenazada o discriminada de forma alguna. Por tanto, desde que aconteció la última actividad protegida, hasta la presentación de la *Demanda* en el 2003, había transcurrido el término prescriptivo de tres años para instar la causa de acción por represalias. Al tema sobre la prescripción añadió Pan Pepín que la recurrida tampoco contaba con prueba para establecer un caso *prima facie* bajo dicha modalidad, careciendo de evidencia sobre el alegado acto de represalia, mostrando ausencia de nexo causal entre la actividad protegida y la acción adversa, además de temporalidad.

Ante ello, la recurrida presentó una *Solicitud de Sentencia Sumaria presentada por la Querellante Solicitando se Dicte Sentencia Sumaria Parcial a su Favor.* La señora Cabrera Torres arguyó que la peticionaria no proveyó una razón justificada para denegar su solicitud de acomodo razonable. A raíz de tal negativa, la recurrida alegó que sufrió un patrón de discrimen en su ambiente laboral, y el entorno se volvió tan hostil que culminó con la presentación de

renuncia involuntaria, el 1 de julio de 2020. Según alegó, Pan Pepín la despidió constructivamente durante la tramitación formal de su petición de acomodo razonable. Arguyó que la inacción de la peticionaria contribuyó al deterioro de su salud.

Es así como, luego de evaluar las referidas mociones dispositivas, junto a sus respectivas oposiciones, el TPI las denegó mediante la *Resolución* cuya revocación nos solicita Pan Pepín. En lo referente a los hechos que el TPI identificó como incontrovertidos enumeró los siguientes:

1. El 30 de enero de 2015, la señora Cabrera fue nombrada empleada en periodo probatorio de Pan Pepín, para ocupar el puesto de "supervisor de producción".

2. La señora Cabrera recibió el manual de normas de la empresa, titulado "Normas Generales de Conducta en el Trabajo".

3. La señora Cabrera era una empleada exenta en Pan Pepín.

4. En el 2018, la señora Cabrera acudió a la CFSE.

5. La Sra. Iraida Rodríguez de Pan Pepín, mediante correo electrónico del 22 de mayo de 2018, en respuesta a un correo electrónico de la señora Cabrera del 21 de mayo de 2018, relacionado a unas cartas de médicos para acomodo razonable, que luego de revisar, en conjunto con el Sr. Víctor Hugo, los documentos que la querellante remitió dicho acomodo, le indicó que lamentaba no podían ofrecerle un acomodo razonable.

6. El 10 de octubre de 2018, notificada el 22 de octubre de 2018, la Sra. Gloriselis Jordán Acevedo, Especialista en Rehabilitación Vocacional de la Región de Bayamón de la CFSE, remitió una carta al Sr. Víctor H. Rodríguez, Jefe de Operaciones de Pan Pepín, sobre la Sra. Diana Cabrera Torres, caso núm. 2018-11-43295. En la misma, indicó lo siguiente:

La señora Cabrera, tiene reconocidos diagnósticos de Episodio de Broncoespasmo. Se desempeña como Supervisora por 4 años. Rinde labores en la línea de Panecillos. Presenta buen apresto ocupacional que le permite continuar trabajando. No obstante, reconociendo la Iniciativa patronal, sometemos respetuosamente a su consideración medidas de ajuste ocupacional a fin de evitar deterioro de condición orgánica. Estas, para ser evaluadas por el patrono y mientras la empleada se encuentre en tratamiento. Entre estas:

• Mantener área de trabajo en condiciones limpias y saludables. (Incluyendo ductos de acondicionador de aire.)
• Mantener en área con buena ventilación. La empleada se beneficiaria de ser considerada para ser relocalizada a un área donde minimice o evite exposición directa y prolongada a partículas de harina en el ambiente (ejemplo: Área de Plantillas). Estas recomendaciones están sustentadas médicamente y dirigidas a mantener a la obrera lesionada activa en el mercado laboral.

7. El 25 de octubre de 2018, el Sr. Víctor Hugo Rodríguez le indicó a la señora Cabrera sobre el asunto de ausencias excesivas, en el último párrafo, reconoce que ella está enferma y continúa diciendo y por eso "hemos sido muy considerados con usted".

8. El 30 de octubre de 2018, el Sr. Víctor H. Rodríguez, Director de Operaciones de Pan Pepín, contestó a la Sra. Diana Cabrera la comunicación de la CFSE. En la misma, le informó las razones por las cuales se le denegó a la señora Cabrera su solicitud de acomodo razonable:

Acuso recibo de la carta del 10 de octubre de 2018, que Gloriselis Jordán Acevedo, Especialista en Rehabilitación Vocacional, de la Corporación del Fondo del Seguro del Estado me envió. En la misma nos presenta unas medidas de ajuste ocupacional para evitar el deterioro de su condición:
• Mantener área de trabajo en condiciones limpias y saludables. (Incluyendo ductos de acondicionador de aire). Como es de su conocimiento, la planta se limpia mientras estamos produciendo y una vez culmina la producción. En la planta no tenemos acondicionador de aire, excepto en las oficinas y en el cuarto de fermentación. Los mismos se limpian periódicamente.
• Mantener el área con buena ventilación. En la planta tenemos abanicos y extractores en las áreas que el proceso nos lo permite. Por la naturaleza de la operación se genera calor.
También sugiere su relocalización a la planta de Planitas. Como le he mencionado anteriormente, en esa planta el personal de producción es el que realiza la limpieza. Por lo tanto, la exposición a las partículas de harina es mayor a la de la Planta #3. Además, no tenemos una vacante de supervisión en esa planta en estos momentos.

9. El 22 de julio de 2019, la CFSE emitió una Decisión del Administrador sobre: Comprensibilidad, Relación Causal, Condición Orgánica en el caso de la señora Cabrera, caso núm. 20181143295, en donde determinó lo siguiente:

Fecha de Radicado: 22 de agosto de 2018
Fecha de Accidente: 16 de febrero de 2018

El presente caso trata de DIANA CABRERA TORRES, quien trabaja para el patrono PAN PEPÍN INC., en calidad de Supervisora Producción en Bayamón, Puerto

Rico. La parte peticionaria radicó un Informe Patronal de Accidente del Trabajo, en el que alegó: "Que debido a su condición respiratoria (asma) con la exposición de harina en el trabajo se le ha ido agravando con el tiempo." Se realizó la investigación correspondiente, y de las evaluaciones y exámenes médicos, se corroboró las funciones y las alegaciones de la lesionada.

Fue evaluada por nuestros Especialistas, quienes determinaron: Episodio de Broncoespasmo Agudo, primaria relacionada, siendo dada de alta el 6 de noviembre de 2018, SIN incapacidad. Vistos los hechos antes mencionados se resuelve que, en el presente caso, ocurrió un accidente o enfermedad ocupacional compensable bajo los términos de la Ley de Compensaciones por Accidentes del Trabajo, por lo que se ordena la Integra Protección de la Ley; no obstante, habiendo sido dada de alta sin incapacidad, no procede acción ulterior alguna, por lo que se ordena el cierre y archivo del presente caso.

10. El 30 de agosto de 2019, la señora Cabrera presentó un cargo, ante la Unidad Antidiscrimen del Departamento de Trabajo y Recursos Humanos, por alegado discrimen por impedimento que tuvo lugar el 18 de mayo y el último acto ocurrió el 27 de agosto de 2019, al amparo de la Ley Núm. 44 de 2 de julio de 1985, según enmendada y el Titulo 1 de la Ley Federal Americans with Disabilities Act de 1990.

11. En la querella, la señora Cabrera alegó que Pan Pepín le negó proveerle acomodo razonable, según fuera informada y solicitado por sus médicos especialistas de la CFSE, para tratar una condición de salud causada por uno de los ingredientes utilizados para la elaboración de la producción diaria en su área de trabajo. Indicó que recibió un Memo por ausentismo y el Director de Operaciones le pidió que no se volviera a ausentar, debido a que estaba recibiendo tratamiento médico, en la CFSE, por su condición de salud.

12. El 1 de julio de 2020, la señora Cabrera le envió vía correo electrónico a la atención de elena.vidal@panpepin.com, Víctor H. Rodríguez vhugo@panpepin.com, Subject:

Carta de Renuncia Diana Cabrera, Anejo su carta notificando su renuncia a su empleo con Pan Pepín, efectivo el 1 de julio de 2020. El cuerpo del correo electrónico dice lo siguiente: Por favor déjeme saber cuándo o qué fecha recibiré mi liquidación de mis beneficios marginales entiéndase vacaciones acumuladas.

13. La Carta de Renuncia de la señora Cabrera que fue anejada al correo electrónico del 1 de julio de 2020, titulada RE: Renuncia Involuntaria dice lo siguiente:

Actualmente me encuentro en mi quinto año como Supervisora de Producción planta #3 Panecillos y formo parte del personal gerencial de Pan Pepín Inc. desde febrero de 2015. Realicé la gestión responsablemente de

reunirme con usted, para discutir ciertas inquietudes en el área de trabajo. A lo que en aquel momento usted me informo que, "le diera la oportunidad de trabajar con lo expuesto a usted". Sin embargo, luego de haber tomado su palabra no vi en algunas de mis inquietudes que hubiera un plan a seguir sobre el área de salubridad y exceso de horas trabajadas desde noviembre 2019 hasta el presente y más aún alguna reconsideración del cambio de oportunidad de otras áreas.

Ninguno de los eventos que yo le relacioné y que estaban sucediendo en la planta y que debieron haber dado base para el comienzo de un plan de mejoramiento, ante mí no se manifestó. El cual de existir, y lo dudamos, no se realizó, ya que nunca me reunieron después de dialogar con usted para discutir nada de este diz que plan, si alguno existía. Pasó mucho más de un trimestre y tampoco se me discutió el alegado plan, de existir.

No fue hasta luego de varios meses que formulé la interrogante, de si existía o no existía el alegado plan o si hubo o no hubo un proceso conducente a la elaboración de un aparente y alegado plan de mejoramiento, ya que día tras día yo sentía las condiciones onerosas y arbitrarias en mi lugar de trabajo que me presionaban al punto de que pensé que en cualquier momento me quedaría sin trabajo y esto me tenía a mí en un estado de ansiedad que no podía seguir soportando. Es por tal razón que no puedo confiar en la palabra de usted Sra. Vidal hasta que estuviera por escrito ya que, por experiencias previas con la empresa, si no está por escrito nunca pasó.

Por lo que luego de dirigirme a dialogar con usted, en cumplimiento con la política de puertas abiertas, y tocar estos temas comenzaron las condiciones onerosas y arbitrarias y de presión indebida en el empleo del que he sido víctima.

En junio 2020, al no poder soportar y tolerar más las condiciones onerosas, irrazonables y arbitrarias, los insultos, burlas, y la represalia y por el inmovilismo por parte de la administración en no hacer nada al respecto, y a raíz de no haber cambios en c[u]anto, a las inquietudes traídas a su atención y mencionadas a su persona, esto me ha afectado emocionalmente de forma tal, que actualmente me encuentro bajo tratamiento médico teniendo así que recurrir a consultas y medicamentos y después de analizar profundamente la situación de que era víctima tomo una decisión, y por iniciativa propia le informo que:

Lamentablemente me han dado a escoger entre mi actual empleo, mi condición de salud que se notificó a ustedes y a la unidad anti discrimen del Departamento del Trabajo u obtener una oportunidad de empleo que aprecie mi preparación y experiencia profesional y que me ofrezca el crecimiento que Pan Pepín me ha negado a lo que lamentablemente tengo que notificar mi renuncia efectiva hoy, 1 de julio de 2020, como Supervisora de Producción Panecillos segundo turno de Pan Pepín Inc. Bayamón Puerto Rico.

Lamento no haber renunciado con anticipación como debe ser, pero
ha sido algo imprevisto.

14. La carta de renuncia fue redactada por la señora Cabrera y discutida con su abogado.

15. El 3 de julio de 2020, la Sra. Elena Vidal, Directora de Recursos Humanos de Pan Pepín, contestó por correo electrónico a la señora Cabrera con copia a la Sra. Militza Rivera su Carta de Renuncia y le informó lo siguiente:

Espero se encuentre bien. Leí su carta de renuncia, lamento que se haya ido sin antes conversar conmigo o con algún representante de Pan Pepín. Le deseo éxito en sus nuevos proyectos. Para recibir orientación del proceso de liquidación, favor de comunicarse con Militza Rivera (copiada en este correo) del departamento de recursos humanos.

16. El 7 de julio de 2020, la señora Cabrera envió otra carta a la atención de la Sra. Elena Vidal, Directora de Recursos Humanos de Pan Pepín y al Sr. Víctor H. Rodríguez, Director de Operaciones de Pan Pepín, notificando nuevamente su carta de renuncia titulada Re: Renuncia Involuntaria, efectiva el 1 de julio de 2020: Actualmente me encuentro en mi séptimo año como Supervisor de Producción planta #3 Panecillos y formo parte del personal gerencial de Pan Pepín Inc. desde febrero de 2015. Realicé la gestión responsablemente de reunirme con usted, para discutir ciertas inquietudes en el área de trabajo. A lo que en aquel momento usted me informo que, "le diera la oportunidad de trabajar con lo expuesto a usted". Sin embargo, luego de haber tomado su palabra no vi en algunas de mis inquietudes que hubiera un plan a seguir sobre el área de salubridad y exceso de horas trabajadas desde noviembre 2019 hasta el presente y más aún reconsideración del cambio de oportunidad de otras áreas. A raíz de no haber cambios en cantos [sic], a las inquietudes traídas mencionadas a su persona, esto me ha afectado emocionalmente de forma tal, que actualmente me encuentro bajo tratamiento médico teniendo así que recurrir a consultas y medicamentos. Lamentablemente me han dado a escoger entre mi actual empleo y mi crecimiento profesional a lo que lamentablemente tengo que notificar mi renuncia efectiva hoy, I de julio de 2020, como Supervisor de Producción Panecillos segundo turno de Pan Pepín Inc. Bayamón Puerto Rico. Lamento no haber renunciado con anticipación como debe ser, pero ha sido algo imprevisto.

17. La señora Cabrera renunció, el 1 de julio de 2020, a su empleo, con Pan Pepín.

Por otra parte, el TPI determinó que los siguientes hechos aún se encontraban en controversia, por lo que no podía dictar sentencia de manera sumaria:

1. Si la señora Cabrera fue víctima de represalias y, por ello, tuvo que renunciar a su empleo.

2. ¿Cuándo fue la última fecha en que la señora Cabrera recibió una acción que puede considerarse como represalias?

3. Si la acción de represalias prescribió.

En desacuerdo, Pan Pepín acude ante nosotros, imputándole al TPI haber cometido los siguientes errores:

**PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NEGARSE A DESESTIMAR SUMARIAMENTE LA ÚNICA CAUSA DE ACCIÓN DE REPRESALIAS CUANDO TAL RECLAMO SE ENCUENTRA PRESCRITO.**

**SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NEGARSE A DESESTIMAR SUMARIAMENTE LA ÚNICA CAUSA DE ACCIÓN DE REPRESALIAS CUANDO LA RECLAMANTE NO LOGRÓ ESTABLECER UN CASO *PRIMA FACIE*.**

A raíz de ello, la señora Cabrera Torres presentó el *Alegato de la parte recurrida*, enarbolando argumentos en contra de la expedición del auto solicitado y sobre los méritos de los planteamientos alzados por Pan Pepín.

## II. Exposición de Derecho

### A. Sentencia Sumaria

El propósito de las Reglas de Procedimiento Civil es proveer a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R.1; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Roldán Flores v. M. Cuebas*, 199 DPR 664, 676 (2018); *Rodríguez Méndez v. Laser Eye*, 195 DPR 769, 785 (2016), *Oriental Bank v. Perapi*, 192 DPR 7, 25 (2014). La sentencia sumaria hace viable este objetivo al ser un mecanismo procesal que le permite al tribunal dictar sentencia sobre la totalidad de una reclamación, o cualquier

controversia comprendida en ésta, sin la necesidad de celebrar una vista evidenciaria. J. A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 1era ed., Colombia, 2012, pág. 218. Procede dictar sentencia sumaria si "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia si las hubiere, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y pertinente y, además, si el derecho aplicable así lo justifica". *González Santiago v. Baxter Healthcare,* supra, pág. 291*; Roldán Flores v. M. Cuebas,* supra; *Lugo Montalvo v. Sol Meliá Vacation,* 194 DPR 209, 225 (2015), *SLG Zapata-Rivera v. J. F. Montalvo,* 189 DPR 414, 430 (2013).

Por el contrario, no es "aconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor credibilidad es esencial y está en disputa". *Ramos Pérez v. Univisión,* 178 DPR 200, 219 (2010).[2] Este mecanismo está disponible para la disposición de reclamaciones que contengan elementos subjetivos únicamente cuando no existan controversias de hechos esenciales y pertinentes. *Rodríguez García v. Universidad Albizu,* 200 DPR 929, 940 (2018), *Velázquez Ortiz v. Mun. de Humacao,* 197 DPR 656, 661 (2017).

El principio rector que debe guiar al juez de instancia en la determinación sobre si procede o no la sentencia sumaria es "el sabio discernimiento", ya que si se utiliza de manera inadecuada puede prestarse para privar a un litigante de su día en corte, lo que sería una violación a su debido proceso de ley. *Mun. de Añasco v. ASES et al.,* 188 DPR 307, 327-328 (2013). Ello, pues la mera existencia de "una controversia de hecho es suficiente para derrotar

---

[2] Citando a *Soto v. Hotel Caribe Hilton,* 137 DPR 294 (1994).

una moción de sentencia sumaria… cuando causa en el tribunal una duda real y sustancial sobre algún hecho relevante y pertinente". *Pepsi-Cola v. Mun. Cidra et al.,* 186 DPR 713, 756 (2012). Se considera un hecho esencial y pertinente, aquél que puede afectar el resultado de la reclamación acorde al derecho sustantivo aplicable. *Ramos Pérez v. Univisión,* supra, pág. 213.

Por otra parte, es esencial reconocer que la Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R.36, establece de manera específica los requisitos de forma que debe cumplir la parte que promueve la moción de sentencia sumaria, así como la parte que se opone a ella. En lo pertinente, la parte promovente debe exponer un listado de hechos no controvertidos, desglosándolos en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible que lo apoya. A su vez, la parte que se opone a la moción de sentencia sumaria está obligada a citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. *Meléndez González, et al. v. M. Cuebas,* 193 DPR 100, 111 (2015)*, SLG Zapata Rivera, v. J.F. Montalvo,* supra, pág. 432.

Como regla general, "para derrotar [o sostener] una solicitud de sentencia sumaria que la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente". *Ramos Pérez v. Univisión P.R., Inc.,* supra, pág. 215. Específicamente, la Regla 36.5 de Procedimiento Civil, 32 LPRA Ap. V, R.36.5, establece que: "[l]as declaraciones juradas para sostener u oponerse a la moción se basarán en el conocimiento personal del (de la) declarante. Contendrán aquellos hechos que serían admisibles en

evidencia y demostrarán afirmativamente que el(la) declarante está cualificado(a) para testificar en cuanto a su contenido". 32 LPRA Ap. V, R.36.5; *Roldán Flores v. M. Cuebas,* supra, en las págs. 677-678.

Nuestro más alto foro ha manifestado que "a menos que las alegaciones contenidas en la moción de sentencia sumaria queden debidamente controvertidas, éstas podrían ser admitidas y, de proceder en derecho su reclamo, podría dictarse sentencia sumaria a favor de quien la promueve". *Meléndez González, et al. v. M. Cuebas*, supra, pág. 137.

### B. Función revisora del foro apelativo con respecto a la sentencia sumaria dictada por el foro primario

En el caso de revisar sentencias del Tribunal de Primera Instancia dictadas mediante el mecanismo de sentencias sumarias o resolución que deniega su aplicación, nuestro Tribunal de Apelaciones se encuentra en la misma posición que el tribunal inferior para evaluar su procedencia. *Meléndez González et al. v. M. Cuebas*, supra, pág. 115. Los criterios a seguir por este foro intermedio al atender la revisión de una sentencia sumaria dictada por el foro primario han sido enumerados con exactitud por nuestro Tribunal Supremo. *Roldán Flores v. Cuebas*, supra; *Meléndez González et al. v. M. Cuebas*, supra. A tenor, el Tribunal de Apelaciones debe:

1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;

2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el

Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

Además, al revisar la determinación del TPI respecto a una sentencia sumaria, estamos limitados de dos maneras; (1) solo podemos considerar los documentos que se presentaron ante el foro de primera instancia, (2) solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González, et al. v. M. Cuebas*, supra, pág. 114.

### C. Ley de Represalias

La Ley Núm. 115-1991, 29 LPRA sec. 194 *et seq.*, prohíbe a todo patrono *despedir, amenazar, o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo **porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico**. (29 LPRA sec. 194a). (Énfasis provisto). Ello, siempre que dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley. *Íd.*

Para que se configure una causa de acción al amparo de la Ley Núm. 115-1991, *supra, [e]l empleado deberá probar la violación mediante evidencia directa o circunstancial*. (29 LPRA sec. 194a). Para ello, ***deberá establecer prima facie que participó en una actividad protegida por la Ley 115, supra, y que fue subsiguientemente despedido, amenazado o discriminado*. *Íd. Marín v. Fastening Systems, Inc.,* 142 DPR 499, 511 (1997). (Énfasis provisto). Si se probara lo anterior, *el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido. Íd*. De así hacerlo, corresponderá al empleado *demostrar que la razón alegada por el patrono era un mero pretexto para el despido. Íd.*

El Art. 2 de la Ley Núm. 115, a su vez, establece que cualquier persona que alegue una violación al estatuto puede instar una acción civil en contra de su patrono **dentro del término de tres años de ocurrida la violación** y solicitar que "se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado". 29 LPRA sec. 194b.

En virtud de lo antes indicado, *para tener una causa de acción bajo la Ley 115, supra, un empleado debe probar un nexo causal entre la conducta del demandado y el daño sufrido, ya sea con evidencia directa o circunstancial, o de manera indirecta. Rivera Menéndez v. Action Services*, 185 DPR 431, 445 (2012); *Feliciano Martes v. Sheraton*, 182 DPR 368, 395-396 (2011). De optar por el mecanismo indirecto, corresponderá al empleado establecer *prima facie* un caso de represalia. *Feliciano Martes v. Sheraton*, supra, pág. 393. Esto último lo logrará si prueba que: (1) incurrió en una actividad o conducta protegida por ley; (2) sufrió una acción disciplinaria o adversa por parte del patrono; (3) existe *nexo causal* entre la conducta protegida y la acción disciplinaria o adversa del patrono. *Íd,* págs. 393-394; C. Zeno Santiago, *Re-enfoque empresarial de las represalias en el empleo*, 40 Rev. Jur. U.I.P.R. 245, 262 (2006).

En lo pertinente, atendiendo al primero de los criterios enumerados, se ha dicho que no se limita a expresiones realizadas únicamente en procesos investigativos, sino que la protección legislada también se extiende al empleado con respecto a cualquier testimonio o información, en cualquier foro, bajo cualquier procedimiento. *Íd.,* a las págs. 394-395.

Con relación a la exigencia de que exista un nexo causal entre la actividad protegida realizada por el empleado y la acción adversa efectuada por el patrono, nuestro ordenamiento adoptó la postura

de la mayoría de los circuitos de la corte de apelación federal, en cuanto a la necesidad de demostrar **la existencia de suficiente proximidad temporal entre ambos eventos**. (Énfasis provisto). *Feliciano Martes v. Sheraton*, supra, págs. 397-398. Se ha determinado que los criterios a ser evaluados como elementos de proximidad temporal son los siguientes: (1) si el empleado fue tratado de forma distinta que otros empleados; (2) si existió un patrón de conducta antagonista en contra del empleado; (3) si las razones articuladas por el patrono para fundamentar su acción adversa están plagadas de inconsistencias, o (4) cualquier otra evidencia que obre en el expediente para establecer el elemento del nexo causal. *Íd; Rivera Menéndez v. Action Services*, supra.

La suficiencia de la proximidad temporal como prueba exclusiva de causalidad, dependerá de cuán cerca en el tiempo están la actividad protegida ejercida por el empleado y la acción adversa llevada a cabo por el patrono. *Feliciano Martes v. Sheraton,* supra, pág. 399. Si la acción adversa del patrono es realizada inmediatamente después del empleado informarle que ha incursionado en una actividad protegida, se entiende que el elemento de proximidad temporal es suficiente para establecer el requisito de existencia de nexo causal. Sin embargo, *cuando el período de tiempo entre el ejercicio de la actividad protegida y la acción adversa del patrono aumenta, el criterio de la proximidad temporal será menos útil para comprobar que existe un nexo causal entre ambos eventos. Íd.*

Compete aclarar que no toda acción de represalia se configura dentro de lo que pudiera catalogarse como *poco tiempo*, por lo que la proximidad temporal como inferencia de causalidad, resultará insuficiente. De ser ese el caso, el empleado deberá demostrar *elementos adicionales que comprueben la existencia de un nexo*

*causal entre la actividad protegida y la acción disciplinaria adversa.*
*Íd,* pág. 400.

En aquellos escenarios en que no se configure una proximidad temporal, el nexo causal se probará si el trabajador logra probar otros hechos. En virtud de ello, deberá establecer lo siguiente: (1) que fue tratado de forma distinta a otros empleados; (2) que existió un patrón de conducta antagonista en su contra; (3) que las razones articuladas por el patrono para fundamentar su acción adversa están plagadas de inconsistencias, o (4) cualquier otra evidencia que obre en el expediente para establecer el elemento del nexo causal. *Íd.*

Lo antes indicado sólo aplica al empleado y su necesidad de establecer un caso *prima facie* por represalias. Sin embargo, si el patrono logra fundamentar una razón no represiva para su decisión, *se requerirá del empleado que, por preponderancia de la prueba, se valga de factores adicionales a la proximidad temporal para comprobar que las razones articuladas por el patrono no son más que meros pretextos destinados a ocultar el verdadero ánimo represivo.* *Íd.*

Surge de lo señalado que la protección ofrecida por la Ley Núm. 115-1991 no es absoluta. Además, no se puede perder de perspectiva que en nuestro ordenamiento todo patrono puede levantar la defensa de justa causa cuando se le acusa de haber realizado un despido injustificado. *García v. Darex P.R., Inc.,* 148 DPR 364, 380 (1999). Cabe señalar que la Ley Núm. 115 no protege a los trabajadores contra acciones disciplinarias motivadas por la manera en la que ejecutan las funciones descargadas en sus puestos. *Rivera Figueroa v. Autoridad de Acueductos y Alcantarillades de Puerto Rico,* 177 DPR 345, 367 (2009).

### III. Aplicación del Derecho a los hechos

a.

La Regla 52.1 de Procedimiento Civil, 32 L.P.R.A. Ap. V, R.52.1, nos autoriza a expedir el auto de *certiorari* cuando se recurra de una denegatoria de moción de carácter dispositivo. Precisamente nos encontramos ante la denegatoria de una moción de sentencia sumaria, *ergo*, de carácter dispositivo, por lo que estamos habilitados para intervenir en el asunto.

b.

Ante dos *Resoluciones* denegatorias de peticiones de sentencia sumaria al amparo de la Regla 36 de Procedimiento Civil, *supra*, procedemos a evaluarlas conforme a los estándares de revisión dispuestos en *Meléndez González et al. v. M. Cuebas*, supra. En consonancia, primero examinaremos si cumplieron con los requisitos de forma establecidos en la citada Regla.

Iniciando con la *Moción de Sentencia Sumaria* presentada por Pan Pepín, juzgamos que cumplió a cabalidad con los requisitos que impone la Regla 36 de las de Procedimiento Civil, *supra*, toda vez que enumeró los hechos materiales que, a su juicio, no estaban en controversia, haciendo referencia a la prueba documental que forma parte del expediente, para luego fundamentar en derecho la solicitud del remedio.

Por otra parte, la *Oposición a Solicitud de Sentencia Sumaria Presentada por la Parte Querellada Pan Pepín* mostró un cumplimiento parcial de los requerimientos de forma que le exige la Regla 36.3(b), 32 LPRA Ap. V, R. 36.3 (b), a la parte promovida. Ello, en tanto no procedió a controvertir los hechos propuestos por la parte promovente mediante una relación organizada que respondiera a los enumerados por Pan Pepín como incontrovertidos.

Con todo, lo explicado en el párrafo que antecede no opera como impedimento para la adjudicación de la controversia material

al examinar la totalidad de las mociones, junto a la prueba documental con las que fueron acompañadas y consta en el expediente ante nuestra consideración. Nuestro Tribunal Supremo, y la propia Regla 36 citada, disponen que, aunque la parte opositora no cumpla con los requerimientos dispuestos, el tribunal estará facultado para dictar una sentencia sumaria a favor del promovente, si procede en derecho. *Meléndez González v. M. Cuebas*, 193 DPR 100, 111 (2015).

c.

El primer señalamiento de error alzado por Pan Pepín refiere a su consistente reclamo de que la causa de acción por presunta represalia está prescrita. Sobre esto valga iniciar afirmando que estamos habilitados para atender tal contención, a pesar de que en la *Sentencia Parcial* que advino final, firme e inapelable el TPI hizo expresiones sobre tal controversia, porque el momento procesal entre la primera y segunda moción de sentencia sumaria instada por Pan Pepín contiene una distinción importantísima, referente al descubrimiento de prueba. Así, mientras en la primera de dichas mociones no se había concluido el descubrimiento, (más bien estaba en una etapa temprana), la segunda moción fue instada cuando ya había concluido el descubrimiento de prueba. Por consiguiente, el TPI, y este foro intermedio, contamos con toda la prueba documental que las partes tienen a su haber para fundamentar sus argumentos.

Entonces, aunque reiteremos, Pan Pepín sostiene que la causa de acción por represalias instada por la recurrida se encuentra prescrita, en vista de que la *Demanda* se presentó en una fecha posterior a los tres (3) años desde que esta participó en una actividad protegida, luego de lo cual no hay evidencia de acción adversa patronal, o no dentro de tal término. Enfatizó que los actos que la recurrida señala como adversos ocurrieron en 2018, entiéndase, antes de que incurriera en su última actividad protegida

en 2019, y pasado el término prescriptivo para la presentación de la *Demanda* en el 2023.

Como contrapartida, la señora Cabrera Torres aduce que el patrono realizó múltiples actos adversos a su persona desde que recibió su diagnóstico de salud por parte del Fondo, en el 2018. Aduce haber establecido con la prueba documental un patrón de daños continuos, los cuales resultaron en su despido constructivo el 1 de julio de 2020. Insiste en la alegación de que Pan Pepín creó un ambiente hostil y que las condiciones de trabajo se vieron afectadas luego de que esta acudiera ante la UAD. Su teoría legal sobre la presentación oportuna de la causa de acción parte del entendido de que el término de tres (3) años comenzó a transcurrir desde que *se vio obligada a renunciar involuntariamente*, el 1 de julio de 2020.

d.

Tiene razón Pan Pepín al afirmar que de la prueba documental presentada ante nuestra consideración no surge alguna acción en represalia cometida por su parte en contra de la recurrida, luego de que esta última presentara la querella ante la UAD. En síntesis, examinada la totalidad de la prueba documental que obra en el expediente, los presuntos actos de represalias cometidos por la peticionaria contra la recurrida ocurrieron en fechas anteriores a la presentación de la querella ante la UAD. A esto cabe añadir que no podemos considerar la renuncia de la recurrida como un *despido constructivo*, ni juzgarlo como una acción adversa de parte del patrono, en tanto tal asunto ya fue adjudicado mediante la *Sentencia Parcial* que desestimó la causa de acción por alegado despido injustificado.

Abundando, cuando sopesamos la prueba documental que obra en el expediente se puede establecer, sin mayor dificultad, el siguiente tracto:

1. El **21 de mayo de 2018**, la señora Cabrera Torres refirió a su patrono, Pan Pepín, una certificación médica de su neumólogo explicando su condición de salud. En esta indicó que debía evitar estar expuesta a ciertos polvos, tales como la harina.[3]

2. El **22 de mayo de 2018**, la señora Iradia Rodríguez le envió un correo electrónico a la recurrida en la que notificó que en todas las plantas hay exposición a la harina, por lo que moverla de planta no es una opción. Además, le informó sobre algunas vacantes, entre ellas, supervisora de la Planta #3. Cabe señalar que este puesto también está expuesto a la harina.[4]

3. El **28 de mayo de 2018**, la recurrida envió un correo electrónico a la señora Iradia Rodríguez, referente a una situación de acoso con el señor Luis Cruz.[5]

4. *El **11 de agosto de 2018**, Pan Pepín amonestó a la señora Cabrera Torres por la manera en la que se comunica a los asociados, por violar la política de la compañía contra el acoso al utilizar sobrenombres para los asociados y por conducta impropia.*[6]

5. **El 22 de agosto de 2018, la señora Cabrera Torres acudió al Fondo en la que estableció que la recurrida estaría recibiendo tratamiento médico por episodios de broncoespasmo agudo, orgánica, primaria, pendiente**.[7]

6. El **10 de octubre de 2018**, el Fondo envió una misiva a Pan Pepín para notificarle sobre la condición de la recurrida. La comunicación incluye medidas de ajuste a ser consideradas por el patrono para evitar el deterioro de la condición.[8]

7. *El **25 de octubre de 2018**, la señora Cabrera Torres recibió un comunicado en forma de memorando sobre la reunión llevada a cabo entre la recurrida, el señor Luis Cruz y el señor Víctor Hugo. En la misma se discutió sobre las repetidas ausencias de la recurrida.*[9]

8. El **30 de octubre de 2018**, Pan Pepín envió una carta como acuse de recibo de la comunicación recibida el 10 de octubre de 2018. En esta indicó que las plantas se limpian durante la producción y al culminar la misma. Indicó que las plantas cuentan con ventiladores y extractores, pero por la naturaleza del trabajo, las operaciones generan calor. Estableció que luego de evaluar las recomendaciones la recurrida estaría expuesta a los particulados de harina. Específicamente indicó que en la relocalización de la planta de Planitas estaría más expuesta toda vez que este personal es el mismo que realiza la limpieza en la estructura.[10]

9. El **6 de noviembre de 2018**, el Fondo emitió una Determinación del Administrador sobre Compensabilidad, Relación Causal, Condición Orgánica,

---

[3] Apéndice del recurso de *Certiorari* págs. 355-357.
[4] Apéndice del recurso de *Certiorari* págs. 377-378.
[5] Apéndice del recurso de Certiorari págs. 358-361.
[6] Apéndice del recurso de *Certiorari* págs. 290-291.
[7] Apéndice del recurso de *Certiorari* págs. 363-364.
[8] Apéndice del recurso de *Certiorari* pág. 283.
[9] Apéndice del recurso de *Certiorari* págs. 379-380.
[10] Apéndice del recurso de *Certiorari* pág. 298.

en la que determinó que en efecto ocurrió un accidente en el trabajo. Sin embargo, luego de evaluada se le dio de alta sin incapacidad a la recurrida. Concluyó que no procede acción ulterior alguna, por lo que ordenó el archivo y cierre del caso.[11]

10. *El **5 de febrero de 2019**, la señora Cabrera Torres fue amonestada por conducta impropia en cuanto al manejo de los empleados.*[12]

11. *El **19 de julio de 2019**, en donde la recurrida recibió una amonestación por sus constantes errores y falta de documentación, tanto en los informes como en unas libretas de control de calidad.*[13]

12. El 22 de julio de 2019, el Fondo archivó el caso de la recurrida sin ningún trámite ulterior.[14]

13. *El **25 de agosto de 2019**, la señora Cabrera Torres recibió una amonestación por una violación en cuanto a la eficiencia y calidad en el desempeño de sus deberes.*[15]

14. **El 30 de agosto de 2019, la recurrida acudió a la UAD para radicar una querella al amparo de la Ley Núm. 44 de 2 de julio de 1985, Ley de Discrimen en el Empleo contra Personas con Impedimentos**.[16]

15. El **6 de septiembre de 2019**, la recurrida envió un correo electrónico para explicar la situación que ocurrió referente a la amonestación de 25 de agosto de 2019. El **7 de septiembre de 2019**, Pan Pepín le contestó que tendrían una reunión con recursos humanos, le indicó que los sucesos fueron investigados y que estarían discutiendo el manual de normas de la compañía sobre sus ausencias.[17]

16. El 1 de julio de 2020, la recurrida presentó su renuncia voluntaria luego de no ver ningún cambio referente a su solicitud de acomodo razonable.[18]

17. El **8 de febrero de 2023**, la recurrida presentó una *Demanda* ante el tribunal por represalias ante los hechos ocurridos entre 2018-2019.

A tenor con el derecho expuesto, no hay controversia sobre el término prescriptivo de tres (3) años que tiene el empleado que reclame una causa de acción contra su patrono por infracción a la Ley Núm. 115-1991, Ley de Represalias. De la enumeración de hechos que precede, mostrando particular atención a las fechas en que se alegó ocurrieron, según ennegrecimos, es evidente que, aun

---

[11] Apéndice del recurso de *Certiorari* pág. 367.
[12] Apéndice del recurso de *Certiorari* págs. 292-293.
[13] Apéndice del recurso de *Certiorari* pág. 294.
[14] Apéndice del recurso de *Certiorari* pág. 282.
[15] Apéndice del recurso de *Certiorari* págs. 295-296.
[16] Apéndice del recurso de *Certiorari* págs. 287-289.
[17] Apéndice del recurso de *Certiorari* págs. 383-385.
[18] Apéndice del recurso de *Certiorari* pág. 308.

partiendo de la premisa de que la recurrida hubiese sufrido represalias al participar de una actividad protegida, tales actos patronales datan del 2018 y, a lo sumo, el 2019. En la misma tónica, no ofrece controversia real tampoco que la última actividad protegida fue en el 2019, con la presentación de la querella ante la UAD, a partir de lo cual el expediente carece de todo tipo de prueba documental que sirva para establecer posteriores actos de represión patronal.

De lo anterior se sigue que, presentada la *Demanda* por represalias el 8 de febrero de 2023, la señora Cabrera Torres ejerció su reclamación a destiempo, momento en el cual la causa de acción ya estaba prescrita.

Aunque lo anterior dispone de la única causa de acción pendiente, lo cierto es que, aun si consideráramos que esta no estuviera prescrita, igualmente la prueba documental nos conduce a concluir que la recurrida tampoco cumplió con los requisitos para establecer un caso *prima facie* sobre represalias.

Según hicimos referencia en la exposición de derecho, para que una causa de acción bajo el estatuto aludido prospere se requiere que el promovente establezca *prima facie* que: 1) participó en una de las actividades que la propia legislación denomina como protegida, y; 2) que, habiendo incurrido en tal actividad, fue subsiguientemente despedido, amenazado o discriminado. *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 671 (2017).

Con la intención de establecer el primero de dichos criterios, —haber participado en una actividad protegida— la señora Cabrera Torres se refirió a la queja que presentó ante la UAD el 30 de agosto de 2019. Toda vez que la actividad protegida es aquella en la que un empleado ofrece, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial, este requisito se cumplió.

No obstante, al sopesar el segundo de los criterios, que, subsiguientemente a incurrir en esa actividad protegida, el empleado haya sido despedido, amenazado o discriminado, de los documentos que obran en el expediente surge que la última amonestación a la recurrida ocurrió el 25 de agosto de 2019, fecha previa a su última participación de una actividad protegida. De igual forma ocurre con todos los hechos señalados como adversos que tuvieron lugar durante el año 2018.

Valga repetir que el TPI desestimó la causa de acción por despido injustificado, no dando lugar al reclamo del presunto *despido constructivo*, por lo que cabe concluir que la recurrida renunció voluntariamente, no siendo forzada, obligada o coaccionada, *ergo*, no podemos considerar tal hecho como un acto en represalia.

Pero, aún más, si para fines *in arguende* tomáramos el presunto *despido constructivo* como la última violación o actuación adversa por parte del patrono hacia la señora Cabrera Torres, tampoco cabría apreciar que se cumpliera con el requisito de temporalidad entre la presentación de la queja ante la UAD y el presunto despido, fallando en establecer un nexo causal. En este sentido, nótese que la recurrida acudió a la UAD el 30 de agosto de 2019 y presentó su renuncia el 1 de julio de 2020, a casi un año de ocurrir la actividad protegida.

En definitiva, concluimos que no hay hechos materiales en controversia que nos impidan disponer de la *Demanda* presentada, solo quedando por aplicar el derecho correspondiente que, en este caso, nos dirige a acoger la moción de sentencia sumaria presentada por Pan Pepín, y desestimar la única causa de acción que subsistía, la de represalias.

**IV. Parte dispositiva**

Por los fundamentos expuestos, expedimos el recurso de *certiorari* solicitado, y *revocamos* la *Resolución* recurrida. Por tanto, declaramos *Ha Lugar* la *Moción de Sentencia Sumaria* presentada por Pan Pepín, y ordenamos la desestimación de la *Demanda* por represalias.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones